# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LATIF ABDULSAYED AND AFAF HANNA | ) ) ) ) ) |
| Appellants, | ) ) |
| v. | ) Civil No. 3:13-01248 ) Judge Sharp ) |
| LINDA HAND, | ) ) ) |
| Appellee. | ) |

## Memorandum

The appeal before the Court arises from an order issued by the Bankruptcy Court on September 12, 2013, denying Appellants' "Motion for extension of the deadline by which to Object to Debtor's Discharge or to Challenge Dischargeability of Certain Debts under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure." On appeal, Appellants submitted two issues for the Court's review:

> 1. The Bankruptcy Court erred in failing to consider the doctrine of equitable estoppel as grounds to use its equitable power to allow Appellants to be granted an extension of time to file an Exception to Dischargeability.
>
> 2. The Bankruptcy Court erred in its application of facts in this case to the doctrine of equitable tolling and should have found that grounds exist pursuant to equitable tolling to allow Appellants an extension of time to file an Exception to Dischargeability.

(Docket No. 4, at 6).

1

The Court has appellate jurisdiction to hear appeals from bankruptcy court pursuant to 28 U.S.C. § 158. In determining appeals from bankruptcy court, the Court reviews findings of fact for clear error and conclusions of law *de novo*. See Behlke v. Eisen (In re Behlke), 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Heights Cmty. Cong. v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir. 1985). Equitable determinations made by the bankruptcy court are reviewed for abuse of discretion. LPP Mortg., Ltd. v. Brinley, 547 F.3d 643, 647 (6th Cir. 2008) (quoting Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee), 530 F.3d 458, 463 (6th Cir. 2008)). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'" Mayor of Baltimore v. West Virginia (In re Eagle-Picher Indus. Inc.), 285 F.3d 522, 529 (6th Cir. 2002) (quoting Soberay Mach. & Equip. Co. v. MRF Ltd., Inc., 181 F.3d 759, 770 (6th Cir. 1999); Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." (Id.)

## I. SUMMARY OF THE FACTS

Appellants in this action, Latif Abdulsayed and Afaf Hanna, bought property and real estate, "Baker's Market," from Appellees, Randal and Linda Sue Hand. Soon after making a down payment of $190,000 and taking control of the property, Appellants discovered that despite the sellers' assurances to the contrary, they did not in fact hold clean and clear title. Two outstanding liens existed on the property totaling $448,839.81, more than half of the sale price. Moreover, the sellers' representations regarding monthly sales were inaccurate.

Appellants sued Appellees in Tennessee state court alleging breach of contract, fraud, and misrepresentation. The trial court originally found for Appellees, but the decision was reversed by the Court of Appeals, which held Appellants had "proved all essential elements of their claim of intentional misrepresentation." (Docket No. 1-10, at 20). It ordered "rescission of the contract, the return to [Appellants] of their $190,000 down payment, and restoring to [Appellees] all of their rights, title, and interests to the business and real estate," and remanded the case to the trial court for proceedings consistent with this opinion. (Id.).

Shortly thereafter, while the Parties awaited a final judgment from the trial court in March 2013, the Hands filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. The Parties discussed the matter and initially agreed that this did not change their particular situation. Appellees' bankruptcy counsel, Edgar Rothschild, communicated to Appellants' counsel, Kristin Fecteau, on April 2 that he would "likely enter an agreement that this debt is non-dischargeable based on the clear language in [the Court of Appeals] opinion, as there appears to be no reason to litigate this further in Bankruptcy Court." (Docket No. 1-16, at 27).

The sixty-day deadline for filing a non-dischargeability action mandated by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure was a week away when Ms. Fecteau contacted Mr. Rothschild again on July 1, stating:

> Enclosed is the Judgment Order from the trial court. It clearly indicates that the Hands obtained this money by fraud. As such, my clients should not be included in the bankruptcy. Please let me know if you will voluntarily enter an Agreement as you stated in your April 2 email that this debt is not dischargeable pursuant to 11 USC 523, or whether I will need to file a Motion regarding whether this is a good faith filing of a debt.

(Id. at 29).

3

Later that day, Mr. Rothschild replied that Randal Hand had died, and the situation had changed dramatically for his remaining client. "I am meeting with Mrs. Hand later this week to discuss her options, but believe it is unlikely she will be able to continue running the market and funding this plan. I will respond when I have a chance to discuss this with my client." (Id. at 33).

The July 8 deadline came and went. On July 12, Ms. Fecteau finally followed up with Appellees, inquiring, "It has now been over a week, would you kindly update me on whether this judgment based on fraud will be voluntarily dismissed from the bankruptcy, or whether I will need to seek all remedies available in having this dismissed?" (Id. at 38.) Mr. Rothschild replied that he had met with Mrs. Hand the week prior and "she intends to go forward with her case. Your deadline to file a complaint has passed." (Id. at 37).

A tense exchange followed. Mr. Rothschild admonished, "If you had timely filed a complaint, then we would have capitulated without a fight. You did not." (Id. at 35). Ms. Fecteau's response was heated:

> You had already stated on April 2 you agreed this was not dischargeable per USC [*sic*] 11 USC 523 and had talked to your clients about it "at length"! You said you would get back to me. Why would I file a complaint when you were agreeing this was an improper debt? Have you intentionally misrepresented to me your agreement of a dismissal only to now argue "deadline"?

(Id.). And finally, from Mr. Rothschild:

> If you had filed a complaint, the debt would have been non-dischargeable, no question about it. However, I repeat myself: you did not. You never proffered an agreed order or moved this along in any way. The notice with the deadline of 7/8/13 is very clear, and is attached. It is not my obligation to tell you how to practice law. My duty is to my clients.

(Id. at 34.)

Approximately two weeks later, on July 26, 2013, Appellants filed a "Motion for Order Pursuant to Bankruptcy Rule 9006(b)(1) for Extension of Time for Deadline to File Notice of Exception to Dischargeability of Debt." (Docket No. 1-10). Following a hearing on this issue, the Motion was denied by the Bankruptcy Court on September 12, 2013. (Docket No. 1-17).

## II.   ANALYSIS

Rule 4007(c) of the Federal Rules of Bankruptcy Procedure requires a party file "a complaint to determine the dischargeability of a debt under § 523(c) … no later than 60 days after the first date set for the meeting of the creditors." A court "cannot extend the deadline … unless that party filed a request to extend the deadline *before* the deadline expired." Wahrman v. Bajas (In re Bajas), 443 B.R. 768, 774 (Bankr. E.D. Mich. 2011).[1] However, because the deadline for filing a § 523(c) non-dischargeability action is not jurisdictional, it is subject to equitable defenses including estoppel and equitable tolling. See Nardei v. Maughan (In re Maughan), 340 F.3d 337, 341 (6th Cir. 2003). Bankruptcy courts are empowered by 11 U.S.C. § 105(a) to equitably toll this deadline when appropriate. See id. at 344.

The first issue brought by Appellants is the Bankruptcy Court's purported failure to consider the doctrine of equitable estoppel. After reviewing Judge Lundin's opinion, the Court disagrees with this argument. While Judge Lundin did not name the doctrine specifically, he clearly examined the requisite factors. He concluded, and this Court agrees, that Appellees and their counsel did not misrepresent either their initial amenability to an agreement of non-

---

[1] Appellants point to Judge Lundin's reference to Bajas, which it misidentifies as "some district court case from another circuit," as an example of "error because it has no application to the facts in the case at bar." In fact, this bankruptcy court decision from within the Sixth Circuit is relevant and properly considered as a source of persuasive authority.

dischargeability or the significant change in circumstances caused by Mr. Hand's death. Therefore, the Court agrees that the doctrine of equitable estoppel is unavailable to Appellants.

Equitable estoppel "'precludes a party to a lawsuit from raising a certain defense, regardless of the merits of the defense, because of some improper conduct on that party's part.'" Chattanooga Agric. Credit Ass'n v. Davis (In re Davis), 330 B.R. 606, 611 (Bankr. E.D. Tenn. 2005) (quoting State Bank of Coloma v. Nat'l Flood Ins. Program, 851 F.2d 817, 819 (6th Cir. 1988)). It requires, "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." Mich. Express, Inc. v. United States, 374 F.3d 424, 427 (6th Cir. 2004) (quoting LaBonte v. United States, 233 F.3d 1049, 1053 (7th Cir. 2000).

Judge Lundin considered the issue of misrepresentation when he distinguished Irwin v. Dep't. of Veterans Affairs, 498 U.S. 89 (1990), from Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231 (1959). He noted Appellants offered only one justification for "ignoring the statute of limitations" – Mr. Rothschild's email of April 2, which stated Appellees would "likely enter an agreement that this debt is non-dischargeable" and that "there appears to be no reason to litigate this further in Bankruptcy Court." (Docket No. 2, at 76-77). Judge Lundin disagreed with Appellants that this statement was an affirmative misrepresentation. To the contrary, Mr. Rothschild's email was not "a statement that he's going to do it or that he has to protect the Creditors in all of their rights and obligations, including statute of limitations." (Id. at 81). The statement was merely "a discussion among lawyers, an exchange." (Id. at 77). And later, when "Mr. Rothschild has got a different case on his hands," (id. at 78), he communicated this to Ms. Fecteau, who was not relieved of her responsibility "to be diligent with respect to that July 8 deadline" by his statement that he would get back to her at an unspecified time. (Id. at 88-89).

6

Appellants assert Judge Lundin's reasoning is "clearly erroneous because Mr. Hand's death had <u>no effect</u> on the dischargeability of the debt." (Docket No. 4, at 18) (emphasis in original). However, this argument fails to recognize that her husband's death did have a substantial effect on the array of options available to Mrs. Hand as the remaining Appellee and her best course of action in light of the changed circumstances.

The Court agrees with Judge Lundin's conclusion and finds that Appellants cannot satisfy their burden with respect to equitable estoppel.

As to the second issue presented, the Court also agrees that the doctrine of equitable tolling does not apply here. Equitable tolling operates when "'there is no allegation of impropriety on the defendant's part." <u>Davis</u>, 330 B.R. at 611 (quoting <u>Hill v. United States Dep't of Labor</u>, 65 F.3d 1331, 1335 n. 2 (6th Cir. 1995)). It permits a court to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." <u>Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.</u>, 209 F.3d 552, 560-561 (6th Cir. 2000).

The Sixth Circuit has generally considered the following factors when deciding whether equitable tolling applies: "'(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.'" <u>Maughan</u>, 340 F.3d at 344 (quoting <u>Andrews v. Orr</u>, 851 F.2d 146, 151 (6th Cir.1988)). Two years after <u>Maughan</u>, the Supreme Court offered a different description of the elements, requiring a plaintiff show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005).

In declining to apply the doctrine of equitable tolling in this case, Judge Lundin noted some confusion exists as to the effect of Pace on Maughan. See Bajas, 443 B.R. at 774 (collecting cases examining equitable tolling under Pace and Maughan in a variety of ways). However, he concluded that Appellants had failed to satisfy their burden under either set of elements.

The first two factors enumerated in Maughan are unhelpful to Appellants, as Ms. Fecteau's actual notice of the filing deadline is undisputed. "When there is no dispute that the creditor received notice of the deadlines, the court's 'inquiry must focus on the diligence used by the plaintiff in pursuing its rights and the resulting prejudice, if any, to the defendant.'" Davis, 330 B.R. at 611 (quoting Maughan, 340 F.3d at 344 (citations omitted)). Given the Parties consistent acknowledgment that the state court judgment against Appellees was likely non-dischargeable, prejudice to Appellees is not determinative here. Thus, for Judge Lundin, the case centered on the factor that Maughan and Pace share: Appellants' diligence in pursuing their rights.

Under either the five-factor or the two-factor inquiry, Appellants failed to pursue their rights diligently after July 1, 2013, when Ms. Fecteau was notified of Mr. Hand's death and its likely consequences. First, she failed to follow up with Mr. Rothschild prior to the July 8 deadline. Second, she failed to timely file either a request for an extension or for a determination on dischargeability by the deadline. Third, once she did follow up four days after the deadline, and Mr. Rothschild confirmed the agreement on non-dischargeability was no longer in Mrs. Hand's best interests, Ms. Fecteau waited an additional two weeks to file a motion for an extension.

Judge Lundin explained Ms. Fecteau's inaction as a lack of familiarity with bankruptcy proceedings. However, this Court finds her actions thoroughly perplexing whether or not Ms. Fecteau is a bankruptcy debutant – the notion of deadlines and statutes of limitations is a procedural bastion throughout all areas of litigation. Appellants are at best overly-creative in their characterization of the delay as "giving the courtesy of waiting to hear if the case would convert a Chapter 7 due to the death of Mr. Hand and not just filing a Complaint, which very likely would have simply added to the cost and complication when everyone agreed no further litigation would be necessary." (Docket No. 6, at 21). Ms. Fecteau was under no obligation to Appellees to courteously allow the deadline to pass. She was under an obligation to her clients to ensure their valid claim was not barred by the statute of limitations imposed by § 523(c). Unfortunately, "clients must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396 (1993). Appellants failed to diligently pursue their rights and, therefore, a defense of equitable tolling is unavailable to them.

The Court is cognizant of the unfortunate position of Mr. Abdulsayed and Ms. Hanna, who are victims of both intentional misrepresentation by the Hands and mistakes by their attorney. However, as Judge Lundin reasoned, the cost of applying one of the equitable defenses in this case (in the absence of either misconduct by Appellees or diligence on the part of Appellants) is also real. He stated, "[I]f I find this is equitable tolling then I've created hugely troublesome dynamic for debtors' lawyers and for creditors' lawyers in bankruptcy cases. Nobody knows how to act and when to act if I do that. And any missing of the statute of limitations becomes an invitation to this kind of litigation." (Docket No. 2, at 80).

Having thoroughly reviewed the record, procedural history, and law relevant to this case, the Court concurs with Judge Lundin's conclusions and finds he committed no abuse of discretion in declining to exercise his equitable power in Appellants' favor in this case. Accordingly, the Bankruptcy Court Order of September 12, 2013 will be confirmed.

An appropriate order will enter.

_Kevin H. Sharp_
KEVIN H. SHARP
CHIEF UNITED STATES DISTRICT JUDGE